No. 50,153

Maxine Russell, *Appellee-Cross-Appellant,* v. Linda Mackey, *Defendant,* and Hartford Insurance Company, *Intervenor-Appellant.*

(592 P.2d 902)

Opinion filed March 31, 1979.

*Hal Pierce,* of Couch, Covell, Dickerson, and Strausbaugh, of Mission, argued the cause and was on the briefs for the appellant.

*James L. Crabtree,* of Schnider, Shamberg, and May, Chartered, of Shawnee Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a dispute between an insured and her no-fault insurance carrier over the subrogation rights of the insurance company for PIP benefits paid, where the insured had recovered damages for her personal injuries by a settlement and judgment from a third-party tortfeasor. The facts in the case are undisputed and are as follows: Plaintiff-appellee, Maxine Russell, was injured in an automobile accident on September 9, 1976. Plaintiff was paid $2,552 by the intervenor-appellant, Hartford Insurance Company, as personal injury protection (PIP) benefits. On June 21, 1977, the plaintiff filed an action against Linda D. Mackey to recover damages for personal injuries sustained in the automobile accident. The plaintiff and defendant Mackey settled the case. On February 22, 1978, by agreement, a judgment was entered in favor of plaintiff Russell and against the defendant in the sum of $15,000, which was paid into court. At this time, a dispute arose between plaintiff and her PIP carrier, Hartford Insurance Company, over reimbursement for the PIP benefits paid to plaintiff. The district court ordered that the clerk retain from the total judgment the sum of $2,552 until such time as the

court could determine the relative rights of Hartford and the plaintiff to the fund.

The plaintiff filed a motion for distribution of the funds. At the same time, Hartford filed a motion for release and reimbursement of personal injury protection benefits. At the hearing held on the two motions, the plaintiff offered to prove that the personal injury action against defendant Mackey was a case of clear liability with very serious injuries and that, for settlement purposes, the case was worth a minimum of $30,000. The plaintiff further offered to show that the defendant lacked the financial resources to pay any judgment out of her own funds and that the limits of liability under the defendant's insurance policy were $15,000. The plaintiff's evidence would show that she was forced to accept a settlement of $15,000 because that was all the money available from the defendant's insurance and there were no other funds from which a greater amount might be paid. The plaintiff offered to prove that a fair settlement in the case against Mackey would have been $30,000 had the defendant been financially responsible. Following the plaintiff's offer of proof, the district court entered an order requiring that, of the $2,552 retained by the clerk, thirty-three and one-third percent or $850.67 of such amount was to be paid to plaintiff's attorney for his services in filing the action and in obtaining a settlement and judgment in the case. At the same time the court found that, while the $15,000 settlement in the amount of the defendant's maximum liability insurance limits was not full compensation to the plaintiff, the plaintiff had accepted that sum in full settlement of the case and, therefore, the Hartford Insurance Company was entitled to a full repayment of the PIP benefits paid since the money paid under the settlement was duplicative of the PIP benefits.

In determining that a reasonable share of the insured's attorney fees should be paid by the PIP insurer, the trial court held that K.S.A. 1977 Supp. 40-3113a (e) should be applied retrospectively in this case, concluding that the statute was procedural in nature, rather than substantive, and, therefore, retrospective application of the statute would not interfere with any vested rights of Hartford Insurance Company. Following the entry of judgment, Hartford appealed to this court contending that the trial court erred in reducing the amount of its reimbursement for PIP benefits paid by requiring it to pay a portion of the plaintiff's attorney fees. Plaintiff Russell also filed a cross-appeal claiming

that the trial court erred in denying her an evidentiary hearing after her offer of proof where she could have shown that the $15,000 settlement was not fully duplicative of the PIP benefits paid by Hartford and, therefore, Hartford was not entitled to full reimbursement for the PIP benefits paid.

In the appeal by Hartford Insurance Company, the basic issue presented is whether K.S.A. 1977 Supp. 40-3113a (*e*) should be applied retrospectively to cases where the insured suffered personal injuries and received PIP benefits prior to July 1, 1977, the effective date of the statute, but where a settlement was recovered by the injured insured subsequent to July 1, 1977. This exact issue was raised by another PIP insurance carrier and determined adversely to the position taken by Hartford Insurance Company, in *Nitchals v. Williams*, 225 Kan. 285, 590 P.2d 582 (1979). On the basis of *Nitchals*, we affirm the district court on the appeal of Hartford Insurance Company in the case now before us.

As to the cross-appeal, plaintiff Russell maintains that the $15,000 recovery in her action against Linda D. Mackey was not full compensation to her for her injuries for the reasons set forth above and, therefore, was not duplicative of the personal injury protection benefits paid to plaintiff by Hartford. Under the peculiar circumstances in this case, the plaintiff contends that the trial court should have afforded her a hearing so that she could have established the nonduplicative nature of the settlement recovery. In support of her position, plaintiff relies upon certain language used in *Easom v. Farmers Insurance Co.*, 221 Kan. 415, 560 P.2d 117 (1977), where the opinion states as follows:

"In numerous personal injury cases where the verdict was claimed to be inadequate, this court has considered the case on the premise that the full pecuniary losses, medical expenses, etc., were included in the verdict when established by substantial evidence. We have directed the granting of a new trial where the verdict was only equal to the amount of medical expenses proven, and awarded nothing for pain and suffering, even though there was uncontradicted evidence thereof. (See *Timmerman v. Schroeder*, 203 Kan. 397, 454 P.2d 522, and cases cited therein.) We believe it must be presumed that pecuniary loss, represented by PIP benefits, is included in a recovery either by settlement or judgment in the absence of proof to the contrary and that the burden of supplying such proof is upon the insured." (p. 427.)

The plaintiff, on the basis of this language, offered to assume the burden of introducing evidence to establish that the amount paid by way of settlement was not, in fact, duplicative of the PIP benefits paid by the insurance company.

Hartford takes the position that the PIP benefits it paid were included as a matter of law in the $15,000 settlement recovered by the plaintiff and that to hold otherwise would only foster additional litigation between an insured and his insurance carrier contrary to the intent and purpose of the no-fault statute. The determination of the issue raised on the cross-appeal requires us to construe again K.S.A. 1977 Supp. 40-3113a with respect to the subrogation right of a PIP carrier to reimbursement of PIP benefits paid, where the injured insured recovers by means of a settlement with the third-party tortfeasor responsible for her personal injuries. The statute provides as follows:

"40-3113a. **Remedy against a tortfeasor, insurer or self-insurer subrogated, when; credits against future payments; limitation of actions; attorney fees.** (a) When the injury for which personal injury protection benefits are payable under this act are caused under circumstances creating a legal liability against a tortfeasor pursuant to K.S.A. 1977 Supp. 40-3117, the injured person, his or her dependents or personal representatives shall have the right to pursue his, her or their remedy by proper action in a court of competent jurisdiction against such tortfeasor.

"(b) In the event of recovery from such tortfeasor by the injured person, his or her dependents or personal representatives by judgment, settlement or otherwise, the insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery and the insurer or self-insurer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise shall be recovered by the injured person, his or her dependents or personal representatives prior to the completion of personal injury protection benefits, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of personal injury protection benefits paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of said personal injury protection benefits.

"(c) In the event an injured person, his or her dependents or personal representative fails to commence an action against such tortfeasor within eighteen (18) months after the date of the accident resulting in the injury, such failure shall operate as an assignment to the insurer or self-insurer of any cause of action in tort which the injured person, the dependents of such person or personal representatives of such person may have against such tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits. Such insurer or self-insurer may enforce same in his or her own name or in the name of the injured person, representative or dependents of the injured person for their benefit as their interest may appear by proper action in any court of competent jurisdiction.

"(d) In the event of a recovery pursuant to K.S.A. 60-258a, the insurer or self-insurer's right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.

"(e) Pursuant to this section, the court shall fix attorney fees which shall be paid proportionately by the insurer or self-insurer and the injured person, his or her dependents or personal representatives in the amounts determined by the court."

In *Easom,* we held that the reimbursement of a PIP insurer for PIP benefits "received" or "payable" under K.S.A. 1975 Supp. 40-3113(a) is limited to those damages recovered by an injured insured which are *duplicative* of damages included in such PIP benefits. We pointed out that the "duplicative" clause was added to further clarify the purpose of the section which was designed in its entirety to prevent a double recovery by the claimant. In order to prevent double recovery, the statute creates in the PIP insurer, which has paid benefits to an injured party for personal injuries, a right to reimbursement if the injured party recovers from the tortfeasor or his insurer. We held, without equivocation, in *Easom* at syl. ¶ 6, that the provisions of K.S.A. 1975 Supp. 40-3113(a) relating to reimbursement of PIP benefits do not operate to effect an equitable distribution of the recovery effected by an injured insured.

In *Easom,* as in the case at bar, the insured brought an action against the third-party tortfeasor which resulted in a settlement and judgment in favor of the insured. Recovery was actually secured through a settlement with the tortfeasor's insurer. The judgment entered on the settlement did not specify what portion of the settlement represented plaintiff's economic loss for which she had received PIP benefits. We held that the duplicative clause did not serve as a basis for injecting an apportionment or equitable distribution theory into the act.

It is important to note that, under K.S.A. 1977 Supp. 40-3113a, it is the injured person who has the right to pursue his remedy against the third-party tortfeasor. In the event of a recovery from the tortfeasor, the PIP insurer is subrogated to the extent of duplicative personal injury protection benefits provided to the date of the recovery and shall have a lien therefor against such recovery. The PIP insurer is given the right under subsection (b) to intervene in any action filed by the insured to protect and enforce its lien. The statute clearly provides that if the insured obtains a judgment or settlement prior to the completion of payment of personal injury protection benefits, the amount of such judgment or settlement actually paid, which is in excess of

the amount of personal injury protection benefits paid to the date of recovery, *shall* be credited against future payments of personal injury protection benefits.

Subsection (*c*) provides that, in the event the injured person fails to commence an action against the tortfeasor within eighteen months after the date of the accident resulting in the injuries, such failure shall operate as an assignment to the insurer of any cause of action in tort which the injured person may have against the tortfeasor for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits. The PIP insurer may then bring an action to protect its subrogation rights.

K.S.A. 1977 Supp. 40-3113a specifically provides for a reduction in the PIP insurer's right of subrogation for PIP benefits paid in only two instances: (1) Under subsection (*d*), in the event of a recovery by the insured under the Comparative Negligence Statute, K.S.A. 60-258a, the PIP insurer's right of subrogation shall be reduced by the percentage of negligence attributable to the injured person. (2) Under subsection (*e*), the PIP insurer's right to subrogation for PIP benefits may be reduced to pay a portion of the attorney fees which were incurred in obtaining the settlement or judgment from the third-party tortfeasor.

Throughout the various states which have enacted some form of no-fault legislation, the right of the PIP insurer to reimbursement or subrogation for PIP benefits paid is controlled by the specific statute involved. The majority of the states require that the no-fault insurer be reimbursed for one-hundred percent of the PIP benefits to be paid out of any recovery. These statutes are designed to prevent any litigation between the insured and his insurance carrier over reimbursement or subrogation rights. In Hawaii, the statute (Haw. Rev. Stat. § 294-7 [1978 Supp.]) allows the PIP insurer to be subrogated to fifty percent of the amount of all no-fault benefits paid. Only in Florida is there a statute which permits an equitable apportionment of the amounts recovered by the insured from the third party between the insured and the PIP insurance carrier. The Florida statute and the difficulties encountered in its application are discussed in some depth in *Easom.* There we held that an apportionment or equitable distribution theory should not be injected into the Kansas No-Fault Law. See 221 Kan. at 424-427.

We have concluded that K.S.A. 1977 Supp. 40-3113a should be construed to mean that, if the injured insured settles his total claim with the tortfeasor, including those elements of damage represented by the PIP benefits, the recovery is duplicative, since it includes the PIP benefits. Since the PIP carrier has a lien under the statute, it is subrogated to and may recover the full amount of its PIP benefits paid out of any recovery made by the insured, subject only to the two statutory exceptions specifically provided for by subsections (d) and (e) of 40-3113a. As noted above, there may be a reduction for attorney fees under subsection (e) and a reduction under subsection (d) for the comparative negligence of the insured where the insured's recovery is reduced by his own negligence in an action brought pursuant to K.S.A. 60-258a.

We believe that such a rule is in accord with the legislative scheme as provided for in 40-3113a. It is the insured who has been given control of litigation against the third-party tortfeasor for the first eighteen months following the accident. Only after the expiration of eighteen months is the PIP insurer entitled to bring an action to recover PIP benefits paid. The insured, by settling his entire claim with the third-party tortfeasor, can effectively destroy the right of the insurer to bring an action to recover from the tortfeasor for the PIP benefits paid. If the insured does not wish to settle his claim with the tortfeasor on this basis, he can attempt to work out a settlement with the PIP insurer for a reduction in the amount to be paid in settlement for its subrogation rights.

In arriving at this conclusion, we note that one of the primary purposes of the no-fault law was to reduce automobile accident litigation and, at the same time, to assure all motor vehicle accident victims of prompt efficient payment of certain economic losses. In order to achieve these purposes, the legislature enacted the Kansas No-Fault Act, including K.S.A. 1977 Supp. 40-3113a, which provided for full reimbursement to the PIP insurance carrier for PIP benefits paid, subject to the two statutory exceptions discussed above. We believe that this interpretation of the statute will most effectively achieve the purpose and intent of the no-fault act. We, of course, recognize the right of the legislature to place other statutory restrictions on the right of the PIP carrier to reimbursement or subrogation if it chooses to do so.

It is undisputed in the case now before us that the plaintiff

settled her total claim, including all elements of damage represented by the PIP benefits, for the sum of $15,000. By settling her claim, plaintiff has effectively barred the PIP carrier from bringing an action against the third-party tortfeasor to recover the PIP benefits paid. Under our construction of 40-3113a in this case, the PIP insurer has a lien and is entitled to be paid out of the recovery the full amount of the PIP benefits paid to the insured subject, however, to a reduction for a proportionate share of the attorney fees as fixed by the court. For these reasons, the case is affirmed as to the cross-appeal.

Judgment affirmed.

HERD, J., not participating.